**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  October 31, 2025

Mr. Wade V. Davies
The Davies Law Firm
900 S. Gay Street, Suite 802
Knoxville, TN 37902

Mr. Joseph Patrick Minta
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530-0000

Mr. Kyle J. Wilson
Office of the U.S. Attorney
1110 Market Street, Suite 515
Chattanooga, TN 37402

Re:  Case No. 24-5656, *USA v. Benjamin Carpenter*
Originating Case No. 3:21-cr-00038-1

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Ms. LeAnna Wilson

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0298p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BENJAMIN ALAN CARPENTER, aka Abu Hamza,

*Defendant-Appellant*.

No. 24-5656

———————————

Appeal from the United States District Court for the Eastern District of Tennessee at Knoxville.
No. 3:21-cr-00038-1—Katherine A. Crytzer, District Judge.

Argued: October 23, 2025

Decided and Filed: October 31, 2025

Before: SUTTON, Chief Judge; GIBBONS and CLAY, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Wade V. Davies, THE DAVIES LAW FIRM, PLLC, Knoxville, Tennessee, for Appellant. Joseph P. Minta, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Wade V. Davies, THE DAVIES LAW FIRM, PLLC, Knoxville, Tennessee, for Appellant. Joseph P. Minta, Gavan W. Duffy Gideon, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Kyle J. Wilson UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

———————————

## OPINION

———————————

SUTTON, Chief Judge. Benjamin Carpenter provided translation and other services to a terrorist organization, ISIS, to permit its propaganda videos to be understood in English. That led to charges, and eventually a jury conviction, that Carpenter knowingly provided material

support to a known terrorist organization.  *See* 18 U.S.C. § 2339B.  On appeal, he challenges his conviction and sentence on several grounds.  We affirm.

## I.

Benjamin Carpenter admired the work of ISIS, more formally known as the Islamic State of Iraq and al-Sham.  To that end, he founded Ahlud-Tawhid Publications (ATP), an organization that translated and published ISIS propaganda in a variety of languages.  Carpenter translated ISIS materials into English and wrote original material for ATP.  He also started an ATP group on the secure-messaging platform Telegram, where he sought and obtained assistance for his ATP projects.

An FBI covert agent obtained access to the ATP Telegram group.  He reached out to Carpenter's account about his translation projects.  Over several months, Carpenter and the agent built a rapport.  The agent would help Carpenter create graphics or facilitate conversations in the Telegram groups.  They would discuss ISIS's goals and ways in which ISIS could amplify its message to the global community through translated videos and other propaganda.  The agent portrayed himself as, and Carpenter understood him to be, affiliated with ISIS.  The agent spoke on behalf of ISIS and described ISIS's priorities from an insider's perspective.  On several occasions, Carpenter recommended to the agent which propaganda ISIS should translate into English, and the agent reported back to him after claiming to confer with ISIS leadership.

On February 1, 2021, the agent asked Carpenter to help him translate an ISIS propaganda video.  He told Carpenter that the "diwan"—ISIS leadership—needed it.  R.209 at 32.  Carpenter reviewed the partially completed translation and told the agent it was "very good."  R.209 at 68.  Carpenter sent the work to a "brother" "with ATP," and returned the completed video transcript to the agent.  R.209 at 94, 97, 110–11.  On February 17, the agent sent a second video transcript to Carpenter, one that Carpenter recommended ISIS prioritize.  Carpenter replied to the agent's new assignment with a "hugging sticker," and reported that he sent the new transcript to the same ATP member to complete.  R.209 at 114–15, 117.  Federal authorities arrested Carpenter before he sent the second translation back to the agent.

No. 24-5656                    *United States v. Carpenter*                    Page 3

The government charged Carpenter with one count of attempting to provide material support or resources to a terrorist organization. *See* 18 U.S.C. § 2339B. After a five-day trial, the jury convicted Carpenter. The district court sentenced him to 240 months.

## II.

Carpenter challenges (1) the indictment and the statute's application to his conduct; (2) the admission of certain evidence; (3) a protective order; (4) the jury instructions; and (5) his sentence.

## A.

Carpenter claims that 18 U.S.C. § 2339B does not cover his conduct.

The statute prohibits anyone from "knowingly provid[ing] material support or resources to a foreign terrorist organization." 18 U.S.C. § 2339B(a)(1). It defines "material support or resources" to include "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials[.]" *Id.* § 2339A(b)(1). The relevant indictment clarified that Carpenter was being charged for providing "translation services." R.108 at 1.

Translation work fits within the statute's prohibition on providing "any . . . service" to a terrorist organization. 18 U.S.C. § 2339A–B. By translating videos from Arabic into English, Carpenter provided a service to ISIS that furthered its propaganda mission. As the Supreme Court has explained in construing the same statute, "service" encompasses "concerted activity" in support of another. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 23 (2010). That is just what Carpenter did in helping ISIS to make its propaganda videos available to those who speak only English.

Context confirms this interpretation. A word, as they say, is "known by the company it keeps," *Russell Motor Car Co. v. United States*, 261 U.S. 514, 519 (1923), and "translation

services" fits comfortably with the various examples of "any . . . service" enumerated in the statute. Take some of the examples: expert advice or assistance, financial services, training support, and personnel support. The law's application to "expert services" and "financial services" in particular shows that Congress meant to include methods of material, professional, and intellectual support within the meaning of "service." Translation services after all require expertise in languages. They thus are cut from the same cloth as other "expert" services, and they thus amount to professional services "done for the benefit or at the command of another" and thus come within Congress' inclusion of "any . . . service." *Holder*, 561 U.S. at 24 (quotation omitted).

That the statute's list of "service" examples does not include a reference to translation work does not undercut this conclusion. The list of examples begins with a word of expansion ("including"), not a phrase of limitation ("including only"). The question is whether translation is akin to the enumerated examples. It is. As just shown, several of them—financial services, expert assistance, personnel support—show that translation and arranging for translation belong in this company.

But this approach, Carpenter complains unsuccessfully, fails to respect *Fischer v. United States*, 603 U.S. 480 (2024). *Fischer* dealt with "a general or collective term at the end of a list of specific items," not the encompassing term "including" as a prelude to a list of examples. 603 U.S. at 487 (quotation omitted). Our interpretation of 18 U.S.C. § 2339A–B does just what *Fischer* asks. It interprets a general phrase—"service"—in light of the included examples. That explains why the conclusion that translation work is included in the relevant "services" does not mean that, as Carpenter worries, "[m]aterial support could be almost anything." Appellant's Br. 32.

Nor does this approach make § 2339B unconstitutionally vague. A statute violates the Due Process Clause of the Fifth Amendment if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see Holder*, 561 U.S. at 20. Carpenter's claim faces the same fate as prior vagueness attacks on § 2339A–B. In *Holder*, another as-applied challenge, the Supreme Court distinguished the

statute from laws that required "wholly subjective judgments," such as tying culpability to conduct that is "annoying" or "indecent." 561 U.S. at 20 (quotation omitted). The statute's list of examples shows that the provision of professional skills is part of the "services" picture. *See* § 2339A(b)(1) (including "financial services" and "expert advice or assistance"). And *Holder* confirmed that "services" maintains its "ordinary meaning" of "concerted activity" between two entities. 561 U.S. at 23–24. No subjective or other slippery judgments are required on either front.

When the federal agent asked Carpenter to help translate his ISIS videos, Carpenter facilitated their translation. He understood that his efforts would help ISIS spread its message. A person of ordinary intelligence would know that this amounted to work conducted "for the benefit or at the command of another." *Holder*, 561 U.S. at 24 (quotation omitted). The statute provided Carpenter with all the notice a reasonable person would need to know that this support to a foreign terrorist organization would violate the law.

## B.

Carpenter challenges several of the district court's evidentiary decisions. Abuse-of-discretion review applies. *United States v. Churn*, 800 F.3d 768, 774 (6th Cir. 2015).

*Exhibits in the Government's September 12 notice.* Before trial, the government filed a notice stating that it intended to introduce evidence of Carpenter's role in ATP, ATP's work product, and Carpenter's interaction with ISIS's work product. Carpenter objects to the district court's determination that the evidence included in the government's notice was intrinsic to the crime charged and claims that in truth it amounted to "other acts" evidence under Rule 404(b).

Evidence of an extrinsic "crime, wrong, or act" is inadmissible "to prove a [defendant]'s character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But "intrinsic acts" do not fall under this umbrella. *Churn*, 800 F.3d at 779. Such evidence is "inextricably intertwined with the criminal act charged or a part of the criminal activity," *id.* (quotation omitted), and is "necessary to complete the story of the charged offense," *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). In addition to

determining whether the evidence falls into this category, a court must also determine whether the evidence complies with Evidence Rule 403.  *Churn*, 800 F.3d at 779.

We have no quarrel with the district court's ruling that the evidence in the government's notice amounted to intrinsic acts.  It saw evidence of Carpenter's role in ATP as "intrinsic to the translation services" charged, and it reasoned that evidence of ATP's and ISIS's work product was "intertwined with . . . alleged knowledge of ISIS's terrorism-related activity and status and the alleged materiality of any support provided."  R.252 at 52.  Consistent with our precedent, the evidence "provides background information, establishes a nexus between individuals, or completes the story of the charged offense," and does not provide "a backdoor to circumvent the goals of Rule 404(b)."  *United States v. Gibbs*, 797 F.3d 416, 423–24 (6th Cir. 2015) (quotation omitted).

The district court also had good reason to find that the "probative value" of this evidence was "not substantially outweighed by a danger of unfair prejudice" under Rule 403.  R.252 at 52.  The evidence was highly probative.  It framed Carpenter's knowledge of, and involvement with, ISIS, and one element of the crime required proof that Carpenter "knowingly provide[d] material support" to a terrorist organization.  18 U.S.C. § 2339B(a)(1).  And it connected Carpenter to ATP, an organization that translated ISIS propaganda into English.  Through it all, the evidence was not unduly prejudicial.  Evidence is not unduly prejudicial "simply because it provides powerful evidence that the defendant committed the charged crimes."  *United States v. Harvel*, 115 F.4th 714, 737 (6th Cir. 2024).  Evidence *is* unduly prejudicial when it "might lead the jury to convict for an inappropriate reason."  *Id.* (emphasis omitted).  No such problem raised its head.

Carpenter claims that the evidence in the notice was cumulative and inflammatory and prevented him from receiving a fair trial.  He does not elaborate how.  Even after showing that a Rule 403 problem did not exist, the district court invited Carpenter to object at trial "[i]f at any point [he] believes that the evidence becomes so cumulative such that the 403 analysis has changed."  R.252 at 52–53.  Carpenter never alerted the court to such a concern after this invitation, and he has not shown an abuse of discretion with the initial admission.

*Exhibits 32–35.*  Carpenter contends that the district court erred by admitting screenshots of his WhatsApp messages with an ISIS-supporting romantic interest because the government did not provide notice of this plan.  *See* Fed. R. Evid. R. 404(b)(3).  But Carpenter misapprehends what happened.  The government introduced the screenshots—enthusiastic discussions of ISIS beheadings—to counter Carpenter's entrapment defense.  That defense required the government to show Carpenter's predisposition to commit the offense beyond a reasonable doubt, making it an "essential element" of their case.  Fed. R. Evid. Rule 405(b); *see also United States v. McMahan*, 129 F. App'x 924, 930–31 (6th Cir. 2005).  The screenshots thus came in under Rule 405, not 404(b).  Once Carpenter "voluntarily joined his 'character' as an issue . . . by pursuing his affirmative defense of entrapment," he "opened the door" for the government to demonstrate his predisposition to commit the crime "without resorting to or relying upon Rule 404(b) and the limitations of its notice requirement."  *United States v. Roper*, 135 F.3d 430, 433 (6th Cir. 1998) (quotation omitted).  No notice requirement applied.

Carpenter resists this conclusion, arguing that his entrapment defense did not give the prosecution license to "roam at will through his past."  Appellant's Br. 43 (quotation omitted).  No such roaming occurred.  The government remained "constrained by familiar rules of relevancy" and "policies against undue prejudice or unfair surprise" in answering his entrapment defense.  *United States v. Ambrose*, 483 F.2d 742, 748 (6th Cir. 1973).  Consistent with that obligation, the district court conducted a relevance and undue-prejudice analysis under Rule 403 for each of the exhibits.  No abuse of discretion occurred.

*FBI Agent Richard Smith's testimony.*  Carpenter objects to the inclusion of lay testimony from an FBI agent, who explained the meaning of "JJ" in Carpenter's WhatsApp messages.  The agent testified that "JJ" "likely" referred to "Jihadi John," a member of ISIS frequently featured in Islamic State execution videos.  R.210 at 120–21.  Carpenter must "state some claim that the identification was faulty or debatable, and show how the answer was prejudicial" in order to "challenge a lay witness's identification testimony on appeal."  *United States v. Kilpatrick*, 798 F.3d 365, 383 (6th Cir. 2015).  While Carpenter maintains that the identification should have been made through expert testimony, he does not disclaim its accuracy or show how the evidence unfairly prejudiced him.  What is more, plenty of other evidence confirmed that Carpenter

committed these crimes, making this fragment of unfavorable testimony harmless. We cannot say with "fair assurance" that this small factual matter "substantially swayed" the verdict against Carpenter. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

*Exhibit 17.* Carpenter takes issue with the government's use of a screenshot of a message from Carpenter in which he sought to draw the covert agent's attention to the locations of American military bases in Syria. Carpenter objects (skeletally) under Evidence Rules 404(b) and 403. He states only that the screenshot is "shocking and prejudicial" and "provides little probative value towards the essential elements of the offense." Appellant's Br. 46. Because Carpenter has not developed his argument regarding Rule 404(b) either on appeal or at trial, we address his claim of prejudice under only Rule 403. We look for "*unfair* prejudice caused by admission of the evidence." *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996). And we must view the evidence "in the light most favorable to the government by maximizing the probative value of the evidence and minimizing its potential prejudice." *Id*.

The district court appropriately considered the admissibility of this screenshot under Rule 403. It found the exhibit relevant for the purpose of establishing that Carpenter understood the covert agent to be "an operator within ISIS, or at least affiliated with ISIS." R.208 at 199. This connection showed that Carpenter knowingly provided material support to the agent, all while thinking he was affiliated with ISIS. When looking to prejudice, the court found that it was "simply an image of locations of American military bases that purportedly are in Syria," and identified no reason to think it would elicit "extreme prejudice" against Carpenter. R.208 at 199. The court thus appropriately weighed the probative value against the risk of unfair prejudice. No error occurred.

*Stipulation.* Carpenter challenges the district court's refusal to allow him to stipulate that he knew ISIS was a terrorist organization. The general rule is that the government is "entitled to prove its case by evidence of its own choice." *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997). An exception arises when a defendant wishes to stipulate that he satisfies the prior conviction element of an offense. *Id.* at 191. This court has consistently declined invitations to expand the government's obligation beyond this exception. *United States v. Luck*, 852 F.3d 615, 624–25 (6th Cir. 2017). We hold that line today.

The district court concluded that the exception did not apply, and for ample reason. Carpenter's knowledge of ISIS "play[ed] a vital role in the United States' proffered narrative," and the evidence had utility beyond simply registering Carpenter's knowledge. R.173 at 2 (quotation omitted). It therefore properly acknowledged "cognizable difference[s] between the evidentiary significance" of a stipulation and the evidence of Carpenter's years-long relationship with ISIS propaganda. *See Old Chief*, 519 U.S. at 191. No abuse of discretion occurred.

## C.

Carpenter contests the district court's decision to allow the FBI agent to use a pseudonym at trial. We review the district court's decision to grant a protective order for abuse of discretion. *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004).

The trial court has broad latitude to "deny, restrict, or defer discovery or inspection" "for good cause." Fed. R. Crim. P. 16(d)(1). On top of that, the Classified Information Procedures Act says that a court may "authorize the United States" to withhold classified information from a defendant and allows the United States to "make a request for such authorization" in a statement "to be inspected by the court alone." 18 U.S.C. app. 3 § 4. Classified information is that which "has been determined by the United States Government . . . to require protection against unauthorized disclosure for reasons of national security." *Id.* app. 3 § 1.

Even classified information must occasionally "give way" "to a criminal defendant's right to present a meaningful defense." *United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011) (quotation omitted). We thus require a district court to consider (1) "whether the material in dispute is discoverable," (2) "whether the material is privileged," and (3) whether "the information is at least helpful to the defense." *Id.* (quotation omitted).

As to the agent's pseudonym, the government's "limited privilege" to withhold the identity of a witness "must give way" when the identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *United States v. Ray*, 803 F.3d 244, 273 (6th Cir. 2015) (quotation omitted). This requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro v. United States*, 353 U.S. 53, 62 (1957). Carpenter bears the burden of providing

"some evidence," beyond conjecture, "that disclosure of the . . . identity would assist in his defense before disclosure will be warranted." *Ray*, 803 F.3d at 274.

Carpenter has not "demonstrate[d] how disclosure of information about the [covert agent] would substantively assist his defense or that disclosure was essential to a fair trial." *Id.* (quotation omitted). Carpenter stated the "strongest weight for disclosure" of the covert agent's identity was that it could allow him to find "relevant cross-examination material relating to the witness's credibility." R.252 at 57. He thus "advanced no more than a simple statement that [the covert agent's] testimony might assist in his defense." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992). This does not suffice. *See id.*; *see also United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985) (per curiam) (finding disclosure inappropriate where defendant merely asserts it would be relevant); *United States v. Doxey*, 833 F.3d 692, 707 (6th Cir. 2016) (same). Carpenter needed to explain how the agent's identity would materially bolster his defense, and he did not.

Other factors insulate this conclusion. Keep in mind that the government still retained a duty to turn over material evidence favorable to Carpenter, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and it may not present material evidence it knows to be false, *Giglio v. United States*, 405 U.S. 150, 153–54 (1972). The district court asked the government to confirm it had complied with its obligations under *Brady* and *Giglio*. The government did just that.

No violation of the Confrontation Clause occurred either. Carpenter "enjoy[s] the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. But this does not "give criminal defendants absolute control over cross-examination." *Dorsey v. Parke*, 872 F.2d 163, 166 (6th Cir. 1989). The district court instead retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits" on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see United States v. Phillips*, 872 F.3d 803, 809 (6th Cir. 2017).

The district court had "latitude" to limit the agent's identity on cross-examination. *See Arsdall*, 475 U.S. at 679. In asking for this protective order, the government argued that

"disclosing the witness's identity would pose a risk to his safety."  R.139 at 6.  The district court agreed, noting that the agent has "a real and substantial risk of danger" to himself and his family if his true identity were disclosed.  R.171 at 2.  All in all, the court fairly balanced Carpenter's and the agent's competing interests.

D.

Carpenter challenges the district court's jury instructions in two ways—once with respect to an instruction the court did not give and once with respect to an instruction the court gave. Abuse-of-discretion review applies.  *United States v. Maddux*, 917 F.3d 437, 447 (6th Cir. 2019); *United States v. Clinton*, 338 F.3d 483, 487 (6th Cir. 2003).

*Proposed jury instruction on bad acts*.  Carpenter asked the district court to instruct the jury about the proper way to assess bad-acts evidence under Evidence Rule 404(b).  The court declined.  In assessing a court's refusal to give an instruction, we ask if it "(1) correctly states the law, (2) is not substantially covered by the instructions actually given, and (3) concerns a point so important that failure to give it substantially impairs the defendant's defense."  *Maddux*, 917 F.3d at 447 (quotation omitted).

The court did not abuse its discretion in refusing to give this instruction for a basic reason.  The court never permitted the introduction of any bad-acts evidence under Rule 404(b). The court reasonably feared that the instruction would serve only to confuse jurors about how to interpret the government's *Rule 405* evidence that permissibly sought to prove a distinct point— Carpenter's disposition—and that was relevant to disproving his argument that the government entrapped him.  *See United States v. Franco*, 484 F.3d 347, 352 (6th Cir. 2007).

Carpenter points to *United States v. Underwood*, an unpublished Eleventh Circuit case in which the court noted in dicta that "jury instructions . . . can minimize [Rule 404(b)] evidence's prejudicial impact."  654 F. App'x 403, 407 (11th Cir. 2016) (per curiam).  But that decision has nothing to say about today's dispute.  Whether in trial courts of this circuit or even courts of the Eleventh Circuit, the case does not require a 404(b) jury instruction when the court admits other types of evidence.

*Allen charge.* Carpenter objects to the district court's *Allen* charge, a jury instruction given when juries deadlock. The two essential components of an *Allen* charge are that it "must address both those in the majority and those in the minority" and "it must remind the jury that no one should surrender honest beliefs simply because others disagree." *Clinton*, 338 F.3d at 490.

The court gave the Sixth Circuit pattern jury instruction. That instruction, as we have said before, "will, in most instances, insulate a resulting verdict from challenge on appeal." *United States v. Roach*, 502 F.3d 425, 439 (6th Cir. 2007) (quotation omitted). The charge asked both those who believed the government's case and those who did not to examine carefully their positions, and it instructed the jurors not to change their mind "just because other jurors see things differently." R.253 at 8–9. No error occurred.

Carpenter claims that the charge coerced the jury into reaching a verdict. But the instruction did no such thing. "As important as it is for you to reach unanimous agreement," the instruction said, "it is just as important that you do so honestly and in good conscience." R.253 at 9. It asked the jurors only to "make every reasonable effort" "to reach unanimous agreement." R.253 at 8.

The timing of the charge also was not problematic. The risk "of coercion," we have observed, "is reduced if the charge is given early rather than after days of deadlocked deliberations." *Roach*, 502 F.3d at 440. The charge is "typically" given "as soon as the jury announce[s] its deadlock," *United States v. Tines*, 70 F.3d 891, 896 (6th Cir. 1995), just as the court did here. The court administered the charge several days into the jury's deliberation and promptly after the jury reported its deadlock. That was well within its discretion. Carpenter does not raise any reasons why the timing of the charge was wrong; he simply states, in conclusory fashion, that it was coercive. That does not suffice to reverse this verdict.

E.

Carpenter challenges his sentence as procedurally and substantively unreasonable.

*Procedural reasonableness.* Cognizable procedural errors in imposing a sentence include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as

No. 24-5656                *United States v. Carpenter*                Page 13

mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). We review such claims for abuse of discretion. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018).

Carpenter claims that the district court misapplied U.S.S.G. § 3A1.4, which enhances a proposed sentence based on "federal crime[s] of terrorism." *Id.* § 3A1.4(a). Such crimes must be "calculated to influence or affect the conduct of a government by intimidation or coercion, or to retaliate against government conduct," and the underlying offense must be included in § 2332b(g)'s list of eligible offenses. 18 U.S.C. § 2332b(g).

The court correctly applied the enhancement. The court had ample evidence that Carpenter had "the specific intent to influence or affect the conduct of the Egyptian government by intimidation or coercion and to retaliate against [the] Egyptian government['s] conduct against ISIS." R.250 at 32. Carpenter, in particular, knowingly facilitated the translation of *Bleeding Campaigns*, a documentary about ISIS's warfare in the Sinai Peninsula, for an individual he thought to be an ISIS member. Carpenter did so knowing full well that the video included content "calculated to influence or affect the conduct of the Egyptian government by intimidation or coercion and to retaliate against the Egyptian government for previous conduct." R.250 at 28. The record amply supports these factual predicates for applying the enhancement.

In addition, the court permissibly found that "provid[ing] material support or resources to a [designated] foreign terrorist organization" counts as an eligible offense. *See* 18 U.S.C. §§ 2339B, 2332b.

Carpenter insists that the government must make these showings by clear and convincing evidence, not a preponderance of the evidence. But circuit authority cuts the other way. *See United States v. Layne*, 324 F.3d 464, 473 (6th Cir. 2003).

Carpenter claims that the district court did not consider "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a)(6). But the court considered the very point. It just reached a different conclusion.

*Substantive reasonableness*.  In challenging a sentence as substantively unreasonable, a defendant asks whether a sentence was "greater than necessary[] to comply" with the general purposes of sentencing, *Gall*, 552 U.S. at 50 n.6, whether, in short, the sentence was "too long," *Rayyan*, 885 F.3d at 442.  Abuse-of-discretion review applies.  *Id*.  We view within-Guidelines sentences as presumptively reasonable.  *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

The trial court did not abuse its discretion.  The term of imprisonment, 240 months, was within the Guidelines range.  While lengthy, the term of supervised release, 20 years, also is well within the statutory authorization.  *See* 18 U.S.C. § 3583(j).  Through it all, the court thoroughly explained itself.  It relied on the "seriousness of th[e] offense," Carpenter's "lack of repentance," and his "high risk of recidivism."  R.250 at 89–90.  All of this gave the court ample reason to impose this within-Guidelines sentence.

We affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-5656

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

    v.

BENJAMIN ALAN CARPENTER, aka Abu Hamza,

    Defendant - Appellant.

```
┌─────────────────────────┐
│         FILED           │
│      Oct 31, 2025       │
│  KELLY L. STEPHENS, Clerk│
└─────────────────────────┘
```

Before:  SUTTON, Chief Judge; CLAY and GIBBONS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

Kelly L. Stephens, Clerk